UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL T.,

            Plaintiff,   **DECISION AND ORDER**

  v.

                                   6:24-CV-06108 EAW

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

## INTRODUCTION

      Represented by counsel, Plaintiff Michael T. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 9), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

      Plaintiff protectively filed his applications for DIB and SSI on February 10, 2021. (Dkt. 3 at 36, 287-88).[1] In his applications, Plaintiff alleged disability beginning December

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

16, 2020. (*Id.* at 36, 287). Plaintiff's applications were initially denied on July 2, 2021. (*Id.* at 36, 164-166). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Edward Malvey on October 19, 2022. (*Id.* at 51-81). On January 17, 2023, the ALJ issued an unfavorable decision. (*Id.* at 33-45). Plaintiff requested Appeals Council review; his request was denied on December 21, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-12). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.  The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2025. (Dkt. 3 at 38). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 16, 2020, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of schizoaffective disorder, bipolar disorder, attention deficit hyperactivity disorder, and anxiety. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*

at 39-40). The ALJ particularly considered the criteria of Listings 12.03, 12.04, 12.06, and 12.11 in reaching his conclusion. (*Id.* at 40).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, as defined in 20 C.F.R. §§ 404.1529 and 416.929, and SSR 16-3p, with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine work for 2-hour intervals during the course of an 8-hour workday. He is able to tolerate occasional changes in a routine work setting such as hours of work, breaks/lunch period, work processes and performance expectations. He is able to adhere to basic standards of neatness and cleanliness in the workplace.

(*Id.* at 41). At step four, the ALJ found that Plaintiff was able to perform past relevant work as a cashier II. (*Id.* at 43). In the alternative, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of hand packager, store laborer, and package sorter. (*Id.* at 44). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 45).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the Commissioner's determination is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions from Adam Brownfeld, Ph.D. and Nurse Practitioner ("NP") Mia Gesel, and improperly characterized Plaintiff's mental health

impairments. (Dkt. 6-1 at 11-18). The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds them to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and 'other factors.'" *Id.* §§ 404.1520c(c); 416.920c(c). The source of the opinion is not the most important factor in evaluating its persuasive value. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). Rather, the most important factors in evaluating persuasiveness are supportability and consistency. *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). Specifically, the ALJ must explain how she considered the supportability and consistency factors, and

may, but is not required to, consider the three remaining factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Although the ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion in the record constitutes procedural error, it does not always lead to a reversal of the ALJ's findings if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, the ALJ evaluated several medical opinions contained in the record to arrive at Plaintiff's RFC. (Dkt. 3 at 41-43). Plaintiff takes issue with the ALJ's evaluation of the opinions of Dr. Brownfeld and NP Gesel. (Dkt. 6-1 at 11).

### A.     Dr. Brownfeld

On June 2, 2021, Dr. Brownfeld conducted a psychiatric evaluation of Plaintiff. (Dkt. 3 at 754-57). Dr. Brownfeld reviewed Plaintiff's history, noting that Plaintiff "was hospitalized twice," has received "mental health services for three years and sees a psychiatrist every two months," and is currently taking medication. (*Id.*). Dr. Brownfeld noted Plaintiff's current functioning, stating that Plaintiff "wakes up once per night" with increased appetite, denies suicidal and homicidal ideation, and experiences depressive, anxious, and manic episodes. (*Id.*). Dr. Brownfeld indicated that Plaintiff was "cooperative and [that his] presentation was adequate." (*Id.* at 755). Dr. Brownfeld further stated that Plaintiff's speech was fluent and clear, his thought process was coherent and goal-directed, and he had a full range of affect with appropriate speech and euthymic mood.

(*Id.*). Dr. Brownfeld's report reflected that Plaintiff can dress and bathe himself, cook and prepare food, shop, manage money, drive, and take public transportation. (*Id.* at 756). In his medical source statement, Dr. Brownfeld concluded:

> [t]here is no evidence of limitation in understanding, remembering, and applying simple and complex directions and instructions; using reason and judgment to make work related decisions; interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions. Due to two psychiatric hospitalizations with long hospital stays and description of psychiatric symptoms, he is markedly limited in regulating emotions, controlling behavior, and maintaining well-being.
>
> The results of the evaluation appear to be consistent with psychiatric problems, and this may significantly interfere with [Plaintiff's] ability to function on a daily basis.

(*Id.*).

The ALJ found "Dr. Brownfeld's assessed limitations only partially persuasive," explaining:

> While he asserted that [Plaintiff] has marked impairment regulating his emotions/controlling his behavior, this is not consistent with his own clinical observations. In fact, it is contradicted by his observations that [Plaintiff] was cooperative with good insight and judgment (Exhibit 7F/4). The opinion seems based more upon [Plaintiff's] history, but it is noted that the longitudinal record does not show ongoing issues with controlling/regulating behavior, acting out or being aggressive towards others at times other than the two brief hospitalizations descri[b]ed above.

(*Id.* at 43). Plaintiff argues that this conclusion was improper because the ALJ elevated his own lay judgment over Dr. Brownfeld's medical expertise. (Dkt. 6-1 at 12-15). The Court disagrees.

"An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion." *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." (quoting *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted); *Arias v. Saul*, No. l8-cv-1296 (KAM), 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) ("The ALJ should have obtained a medical opinion from a qualified source, as her RFC could not stand if unsupported by at least one medical opinion.").

Here, the ALJ did not improperly rely on his own lay opinion in not fully crediting Dr. Brownfeld's opinion. As noted, in concluding that Dr. Brownfeld's opinion was only partially persuasive, the ALJ pointed to Dr. Brownfeld's own clinical observations that Plaintiff had good insight and judgment as evidence that seemingly conflicts with Dr. Brownfeld's overall opinion.

In addition, the ALJ explained that Dr. Brownfeld's assertion that Plaintiff has marked impairment regulating his emotions appears to be based on Plaintiff's history, which the ALJ notes does not reflect Plaintiff "acting out or being aggressive towards others at times other than the two brief hospitalizations." (Dkt. 3 at 43). In the decision,

which must be read as whole, the ALJ cited to numerous treatment records which support that determination. For example, the ALJ cited to LMSW Ronda Thurston's clinical observations which noted Plaintiff's euthymic mood, good eye contact, and normal level of activity. (*Id.* at 39). LMSW Thurston's records noted that Plaintiff reported he was "doing really good" and that he was cooperative and oriented. (*Id.* at 991). The ALJ also cited records from Victoria Korth, M.D., which indicated that Plaintiff was working part-time for his father and exhibited a euthymic mood. (*Id.* at 39). Dr. Korth's records also reflected that Plaintiff was cooperative, had a normal level of activity, and was pleasant and friendly. (*Id.* at 765). The ALJ cited to treatment records from Kamal Gautam, M.D., reflecting that Plaintiff was sleeping well with normal mood and behavior; records from Monica Quistorf, R.N., indicating that Plaintiff had a "bright affect"; and records from Wendy A. Haywood, R.N., noting that Plaintiff "had no symptoms at all." (*Id.* at 42). Numerous treatment records throughout the administrative record document Plaintiff to have fair judgment and insight (*see, e.g., id.* at 1077, 1081, 1086, 1129, 1138, 1149, 1154), a normal speech rate (*id.* at 844, 851, 859, 860, 873, 913, 991, 1007), good articulation (*id.* at 878, 991, 1007, 1011, 1034, 1038, 1050, 1058, 1077, 1104), and a euthymic mood (*id.* at 844, 890, 902, 910, 913, 916, 919, 928, 991, 1011, 1012, 1064, 1086, 1101, 1115, 1178). Thus, the ALJ's conclusion that the longitudinal treatment record did not fully support Dr. Brownfeld's opinions is supported by substantial evidence.

In addition to the treatment records, the ALJ also relied on other medical opinions in the record in crafting the RFC. For example, State Agency reviewing psychologists, A. Chapman, Psy.D., and P. Roy-Petrick, Ph.D., opined that Plaintiff did not have limitations

in the ability to sustain an ordinary routine without special supervision and the ability to work in proximity to others. (*Id.* at 82-100, 144-63). The State Agency reviewing psychologists noted Plaintiff was not significantly limited in the ability to perform activities within a schedule, to maintain attention and concentration for extended periods, and to make simple work-related decisions, but that Plaintiff was moderately limited in the ability to complete a normal workday and to carry out detailed instructions. (*Id.*). In finding these opinions persuasive, the ALJ noted that both opinions cite to evidence which is consistent with the limitations they found and are "supported by the clinical observations offered by consultative psychologist Dr. Brownfeld." (*Id.* at 43).

In short, contrary to Plaintiff's implication, this is not a case where the ALJ disregarded a well-supported medical opinion and fashioned an RFC from whole cloth. As explained above, the limitations included in the RFC are well-supported by the evidence, including the opinion evidence, in the record. Any conflicts in the record were appropriately resolved by the ALJ, as he is tasked to do. *See Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *6 (W.D.N.Y. Feb. 22, 2021) ("The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts."). Accordingly, remand is not required on this basis.

### B.     NP Gesel

Plaintiff also challenges the ALJ's assessment of NP Gesel's opinion. (Dkt. 6-1 at 15-18). On June 27, 2022, NP Gesel prepared a psychological assessment of Plaintiff. (Dkt. 3 at 1185-88). NP Gesel noted Plaintiff experiences "weight gain, fatigue, [and] daytime sleepiness" because of his medication. (*Id.* at 1186). NP Gesel stated that

Plaintiff's "[p]ositive symptoms of schizoaffective disorder are well controlled" and that he has "negative symptoms of primary thought disorder" as he is depressed with passive suicidal thoughts. (*Id.* at 1187). NP Gesel further indicated that Plaintiff interacts appropriately with others but noted that Plaintiff has lost a job because his behaviors interfere with his daily living activities. (*Id.*).

> The ALJ concluded that NP Gesel's opinions were not persuasive, explaining:
>
> As for the opinion of Nurse Practitioner Gesel, it is noted that she did opine that [Plaintiff] had marked and severe limitations of function, but she did not provide any explanation as to the basis for these assessed limitations nor did she indicate how [Plaintiff's] symptoms supported them. Further, this assessment is inconsistent with her own clinical observations, and it is not supported by other evidence such as observations by Nurse Haywood and others. While [Plaintiff] had bouts of reported increased anxiety and loss of motivation, most examinations from both Nurse Practitioner Gesel and Nurse H[a]ywood document [Plaintiff] as doing well. They show that sleep was good, memory was intact, mood was euthymic, and thoughts were linear. They also document fair insight and judgment, sustained attention, and fairly neat appearance, but for unkept beard (Exhibit 17F/80., 59, 66, 55, 47, 1, 3). As such, I do not find this opinion persuasive.

(*Id.* at 43).

Plaintiff argues that the ALJ's rejection of NP Gesel's opinion was unsupported because the ALJ failed to consider the supportability and consistency factors. Again, the Court disagrees.

Generally, the "supportability" factor "asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations,'" while "[t]he 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14

(S.D.N.Y. Jan. 29, 2021), *adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2)).

Here, the ALJ analyzed the supportability and consistency factors in assessing NP Gesel's opinions. As to supportability, the ALJ noted that NP Gesel "did opine that [Plaintiff] had marked and severe limitations of function, but she did not provide any explanation as to the basis for these assessed limitations nor did she indicate how [Plaintiff's] symptoms supported them." (Dkt. 3 at 43). This was an appropriate consideration. *Acosta Cuevas*, 2021 WL 363682, at *14 (finding that the ALJ did not properly discuss the supportability factor when the ALJ did not explain what the medical provider "used to support their opinions and reach their ultimate conclusions").

Regarding consistency, the ALJ concluded that NP Gesel's opinion was not consistent with the record before him, specifically that NP Gesel's "is not supported by other evidence such as observations by Nurse Haywood and others." (Dkt. 3 at 43); *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 586 (S.D.N.Y. 2022) (noting that the ALJ did not properly address consistency when the ALJ failed to "specifically compare other objective medical evidence in the record to" that medical provider's opinion). As set forth above in more detail, multiple clinical observations in the record were inconsistent with the limitations imposed by NP Gesel. It was for the ALJ to resolve those conflicts, as he has done. Because substantial evidence supports the ALJ's conclusions, remand is accordingly not warranted on this basis.

### C. ALJ's Consideration of Mental Impairments

Finally, Plaintiff argues the ALJ demonstrated a fundamental misunderstanding of bipolar disorder and schizoaffective disorder by failing to acknowledge the cyclical nature of Plaintiff's mental impairments, mischaracterizing Plaintiff's hospitalization history, and improperly accounting for Plaintiff's medication noncompliance. (Dkt. 6-1 at 13-15). But Plaintiff's arguments largely amount to a disagreement with the ALJ's weighing of the evidence, and it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record. *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . . In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (citation and quotation omitted)).

For example, Plaintiff argues that the ALJ ignored the cyclical nature of Plaintiff's impairments. To be sure, in the case of mental impairments, "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98. Accordingly, ALJs "should not rely heavily on the findings of consultative physicians after a single examination." *Id.* (citation omitted). But here, the ALJ did not ignore the cyclical nature of Plaintiff's mental impairments and acknowledged the presence of waxing and waning symptoms. In addition, the ALJ expressly reviewed Plaintiff's testimony, the opinions of multiple medical providers and State Agency reviewing

psychologists, and the medical treatment records in determining the RFC. Plaintiff has not demonstrated evidence that the ALJ overlooked or how he failed to consider Plaintiff's longitudinal mental health.

Similarly, while Plaintiff argues that the ALJ mischaracterized his hospitalization history, this argument is not supported in the record. The ALJ expressly considered Plaintiff's two hospitalizations, six and ten days in length, stating that Plaintiff experienced "two brief hospitalizations." (Dkt. 3 at 43). The ALJ described Plaintiff's six-day hospitalization, noting that "after his medications were adjusted, he reported that he felt calm and happy." (*Id.* at 39). The ALJ also detailed Plaintiff's second hospitalization, noting that Plaintiff had not attended counseling for more than two months before being hospitalized, but was released within a week after his medications were adjusted. (*Id.*). Because the ALJ considered the hospitalizations in detail in the decision, whether or not the length of hospitalization should or should not be considered "brief" does not alter the substance of the assessment made by the ALJ. *See Chelsea L. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00933-CJS, 2024 WL 4198143, at *19 (W.D.N.Y. Sept. 16, 2024) (finding the ALJ did not ignore evidence when the ALJ acknowledged Plaintiff's hospitalization history).

Finally, Plaintiff argues that the ALJ improperly considered his noncompliance with prescribed medication. In general, "while an ALJ may properly consider a claimant's noncompliance with recommended treatment in evaluating his subjective symptoms, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the

noncompliance." *Christopher P. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00001 (JGW), 2024 WL 3029432, at *5 (W.D.N.Y. June 17, 2024); *see also Jimmeson v. Berryhill*, 243 F. Supp. 3d 384, 392 (W.D.N.Y. 2017) ("If compliance with treatment is used to justify an assigned RFC, it is incumbent upon the ALJ to identify what mental health impairments plaintiff suffers from and then fully consider whether a manifestation of the mental health impairment is non-compliance with recommended treatment.").

Here, in assessing Plaintiff's testimony, the ALJ observed that Plaintiff "has not been fully compliant with treatment" and has "admitted to non-compliance with his medication regimen." (Dkt. 3 at 42). The ALJ did not go on to expressly consider whether Plaintiff's mental impairments contributed to the noncompliance. *See Smoker v. Saul*, No. 19CV1539ATJLC, 2020 WL 2212404, at *18 (S.D.N.Y. May 7, 2020) ("An ALJ may properly consider noncompliance with medication in the context of assessing a claimant's credibility. . . . However, the ALJ cannot draw negative inferences from Smoker's sporadic noncompliance with her medication regimen "without first considering any explanations that the individual may provide, or other information in the case record, that may explain" her failure to comply. (quoting *McDowell v. Colvin*, No. 11-CV-1132 (VEB), 2013 WL 1337152, at *13 (N.D.N.Y. Mar. 11, 2013)).

However, any potential error arising from the ALJ's failure to expressly consider explanations for Plaintiff's lack of compliance is harmless because Plaintiff's lack of compliance with his medication did not form the basis of the RFC determination or impact the ALJ's assessment of the medical opinion evidence. *Stephanie T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0322 CJS, 2021 WL 4189704, at *8-10 (W.D.N.Y. Sept. 15, 2021)

(finding that the ALJ did not fault Plaintiff for his noncompliance when the "ALJ merely observed that Plaintiff was non-compliant with treatment in several instances, and that her functioning improved when she was compliant with treatment"); *Weed Covey v. Colvin*, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015) ("The fact that the ALJ did not explicitly reference Plaintiff's alleged mental impairments as a cause for noncompliance does not mean that it was not considered."). Instead, here the ALJ simply noted that Plaintiff has not been fully compliant with his medication regimen, a fact which Plaintiff does not dispute, as one of several reasons for his decision to not fully credit Plaintiff's testimony. *Raymond Q. v. Saul*, No. 5:18-CV-544 (FJS/CFH), 2019 WL 4758269, at *6 (N.D.N.Y. Aug. 7, 2019) ("[T]he ALJ's failure to consider plaintiff's explanation would be harmless error, as plaintiff's noncompliance was but one of several factors considered when assessing plaintiff's credibility."), *report and recommendation adopted*, 2019 WL 4757316 (N.D.N.Y. Sept. 30, 2019); *Gonzalez v. Berryhill*, No. 3:17CV01385(SALM), 2018 WL 3956495, at *6 (D. Conn. Aug. 17, 2018) ("Nevertheless, the ALJ's failure to consider plaintiff's explanations would be harmless error, as plaintiff's noncompliance was but one of several factors considered when assessing plaintiff's credibility."). Because the ALJ did not put undue emphasis on Plaintiff's noncompliance, the noncompliance was one of multiple reasons identified by the ALJ not to fully credit Plaintiff's testimony, and the RFC was based on a comprehensive consideration of a fulsome record, any potential error was harmless. *Maria C. T. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1521 (DEP), 2022 WL 2904367, at *7 (N.D.N.Y. July 22, 2022) ("Lastly, even if the ALJ improperly relied on such noncompliance with therapy without first considering the reasons for that

noncompliance, the balance of the ALJ's decision, as was discussed above, makes clear that the ALJ at least implicitly found that Dr. Grassl's opinion was inconsistent with the record, and such inconsistency with the medical evidence constitutes a valid reason for finding her opinion to be unpersuasive.").

For these reasons, remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Judge

Dated: May 16, 2025
      Rochester, New York